SARBER *v.* CITY OF INDIANAPOLIS.

[No. 10,159. Filed February 20, 1920.]

1. NEGLIGENCE.—*Proximate Cause.—Combination of Causes.*— Where several causes, dependent or independent of each other, all contribute to an injury, an action may, in a proper case be founded upon all or any of the causes; and where two causes combine to produce an injury, both being proximate, one the result of negligence, the other an incident as to which neither party is at fault, the negligent party is liable if the injury would not have happened but for such negligence.  p. 600.

2. NEGLIGENCE.—*Proximate Cause.— Determination.— Intervening*

Sarber *v.* City of Indianapolis—72 Ind. App. 594.

*Agency.*—In determining what was the efficient cause of an injury, the test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrongdoer and the injurious consequence.  p. 604.

3.  NEGLIGENCE.—*Proximate Cause.—Intervening Agency.*—Where there is an intervening responsible agency which directly produces an injury, the question whether the original negligence is to be regarded as the proximate cause or only as a condition or remote cause is to be determined by ascertaining whether the intervening agency was of such a character, and the circumstances under which it occurred were such that it might have been reasonably expected that such an agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused, and if, under the circumstances, the intervention of such an agency, and the manner of its occurrence, might reasonably have been expected in the usual course of events and according to common experience, then the chain of causation from the original cause is not broken, and the original act will be treated as a proximate cause.  p. 608.

4.  NEGLIGENCE.—*Proximate Cause.—Intervening Agency.*—An intervening agency over which the original tort feasor had no control, and which was not put in motion by the original negligent act, will be treated as the sole proximate cause of the injury produced, where the character of the intervening agent, and the circumstances surrounding the intervention were such as could not reasonably have been expected to occur in the ordinary course of nature and according to common experience.  p. 608.

5.  MUNICIPAL CORPORATIONS.—*Public Parks.—Negligence in Management.—Personal Injuries.—Proximate Cause.*—Where a municipal corporation, which, as a part of a public park, assumed control of a part of a river and maintained it as a place for boating, allowed barbed wire to remain in the bed of the stream and, when a canoe was overturned by a collision with a racing motorboat, a swimmer who attempted to rescue a woman thrown from the canoe became entangled in the wire and was drowned, the negligence of the municipality in permitting the wire to remain in the river was not the proximate cause of the death, but was a mere incident in the chain of circumstances leading up thereto, the proximate cause being the negligence of the persons in charge of the motorboat; nor does the fact that the city had placed a motorboat on the river to inspect it daily and keep it free from obstructions, and to protect the lives of those who were boating, make such negligence of the city the proximate cause.  pp. 609, 610.

6. MUNICIPAL CORPORATIONS.—*Public Parks.—Management.—Care Required.*—Where a city, as a part of a public park, assumed control of a river and maintained it as a place for boating, the city was bound only to exercise care commensurate with the dangers likely to occur, and reasonably to be anticipated from the use of the river for the purposes for which it was intended. p. 610.

7. NEGLIGENCE.—*Proximate Cause.*—Proximate cause is the efficient cause, the one that necessarily sets the other causes in motion. p. 610.

From Marion Superior Court (99,463); *Theophilus J. Moll,* Judge.

Action by Oliver B. Sarber against the City of Indianapolis. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Charles F. Remy* and *James M. Berryhill,* for appellant.

*Walter Myers* and *Thomas E. Stevenson,* for appellee.

McMAHAN, J.—This is an action by appellant to recover damages for the loss of services of his minor son, Stuart Sarber, who was drowned in White River contiguous to Riverside Park, in the city of Indianapolis. The only question presented is the action of the court in sustaining a demurrer to the complaint.

This complaint is in two paragraphs and, in substance, alleges that the appellee had complete control and supervision over said park which was located in the northwestern part of the city, being bounded on the south by Eighteenth street, and extending northward bordering upon White river for a distance of about two miles to Thirty-Eighth street; that from Eighteenth street to a point about 200 feet north of Thirtieth street said park lay along and bordered upon both sides of the river, and from that point

north to Thirty-Eighth street it bordered only upon the west side of the river. There was a bridge across the river at Thirtieth street, near which the appellee had erected a large number of buildings for the use and comfort of those persons who from time to time would visit the park; that the appellee leased that part of the park lying north of Thirtieth street and east of the river to one Strowbridge to be used for boathouses, wharfs and landings for pleasure boats; that a large number of such boats kept at such place were used on said river; that a number of high-powered motorboats were with the knowledge and consent of appellee kept on said river in and bordering upon the park; that appellee created and established in the park near Thirtieth street a playground and place of amusement and invited the public to go to said place; that appellee assumed control of the river north of Thirtieth street for a distance of one mile, and made it a part of said playground and place of amusement; that during the summer of, and prior to July 2, 1914, appellee knowingly, negligently and carelessly permitted said portion of said river to be occupied and used by motorboats and launches in charge of reckless and careless persons, and knowingly and negligently permitted high-powered motorboats occupied and in charge of reckless and careless persons to race and go at a high and dangerous rate of speed over the part of said river over which it had assumed jurisdiction; that hundreds of pleasure boats occupied by persons invited by appellee to do so were plying the waters of said river.

It is further charged that prior to July 2, 1914, appellee suffered and permitted strands of barbed wire and broken fence of barbed wire to be washed

into said river and to become imbedded in the bottom
of that portion of said stream used and occupied by
boats to which the public were by appellee invited,
and that appellee negligently and carelessly suffered
and permitted said wire to be and remain so im-
bedded and to become dangerous and perilous to those
who were boating upon said river in the event a boat
was upset at or near the location of said wire; that ap-
pellee knew when the wire was washed into said river,
and suffered the same to remain in said river without
notice of warning to those boating on the river, and
that said Stuart Sarber at no time knew that said
barbed wire was in said river.

It was also alleged that on July 2, 1914, appellant's
son, with three other young people, were boating
upon White river north of Thirtieth street; that ap-
pellant's said son and his companion occupied one
canoe, and the other couple, Howard Coombs and
Bernice Gibson, occupied another boat; that appellee
at that time knew there were a large number of
canoes and boats upon that part of said river; that
there were with the permission and invitation of
appellee high-powered motorboats in charge of care-
less and reckless operators; that appellee at the time
knew that said barbed wire was in and embedded
in the bottom of said river at the place where ap-
pellant's said son and companions were boating and
knew the dangers to appellant's son and his com-
panions, in that the boat in which they were riding
might be overturned by coming in contact with said
motorboats and the occupants of such overturned
boats thrown into the river and their lives endan-
gered by reason of the presence of said barbed wire
in the river. It is also charged that the boat occupied
by Howard Coombs and Miss Gibson was run down

and overturned by a high-powered motorboat which was being operated in a reckless and unlawful manner by persons known to appellee to be reckless and careless operators and careless users of said stream, and which motorboat was racing upon said river; that Miss Gibson was thrown into the river at a point where the water was six or eight feet deep; that appellant's son, being an expert swimmer, leaped into said river for the purpose of rescuing Miss Gibson, and that he would have rescued her except for the fact that her clothing became entangled and fastened in said barbed wire, and had not his clothing also become entangled and fastened in said wire, but that because said wire had been so negligently and carelessly permitted by appellee to be and remain in said river, appellant's son was drowned in an attempt to rescue Miss Gibson.

The gist of the negligence charged in the complaint is that appellee "negligently and carelessly suffered and permitted said wire to be and remain so imbedded and to become dangerous and perilous to those who were boating upon said river, in the event a boat was upset. at or near the location of said covered perils; and suffered and permitted said barbed wire so to remain on the bottom of said river, without notice or warning to any one."

Appellant and appellee do not differ much in their contentions as to what the law is. They differ, however, in its application to the facts alleged in the complaint.

Appellant contends that the case of *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 112 N. E. 994, is controlling and fixes the liability of appellee. It was there held that a municipal corporation having the

power of exclusive control and custody of its parks through a board of park trustees, created in accordance with §8747a Burns 1914, Acts 1909 p. 155, is liable for an injury resulting in their management. If it be held that the alleged negligence of appellee was not a proximate cause of the injury of which complaint is made, it will not be necessary for us to give the Loy case any consideration.

It therefore becomes necessary for us to determine whether the alleged negligence of the appellee was a proximate cause of the death of appellant's son, or whether such negligence was merely a circumstance or condition in the chain of causes leading up to and producing such death.

Appellee contends that the proximate cause of the collision and the throwing of Miss Gibson into the river was the negligence of the operator of the motorboat, and not the negligence of the appellee, and that the presence of the wire in the river could in no sense be the proximate and natural cause of the injury of which complaint is made. Appellant, on the other hand, contends that the proximate cause of the death of his son was the alleged negligence of the appellee in knowingly suffering and permitting the wire to be and remain in the river under the circumstances as alleged in the complaint.

It is settled that where several causes, dependent or independent of each other, all contribute to an injury, an action may, in a proper case, be

1. founded upon all or any of the causes (*Louisville, etc., R. Co.* v. *Hicks* [1894], 11 Ind. App. 588, 37 N. E. 43, 39 N. E. 767), and that where two causes combine to produce an injury, both being proximate, one the result of negligence, the other an

incident, as to which neither party is at fault, the negligent party is liable if the injury would not have happened but for such negligence. *Toledo, etc., R. Co. v. Tapp* (1892), 6 Ind. App. 304, 33 N. E. 462.

In the case of *Alexander v. Town of Newcastle* (1888), 115 Ind. 51, 17 N. E. 200, the plaintiff was passing along the street in charge of a prisoner. In attempting to escape the prisoner seized him and threw him into a pit negligently permitted by the town authorities to remain in the street. In holding that the negligence of the town was not the proximate cause of the injury suffered by plaintiff, the court said: "However negligent a person, or a corporation, may have been in some particular respect, he, or it, is only liable to those who may have been injured by reason of such negligence, and the negligence must have been the proximate cause of the injury sued for. Where some independent agency has intervened and been the immediate cause of the injury, the party guilty of negligence in the first instance is not responsible."

In *Faulkner v. City of Aurora* (1882), 85 Ind. 130, 44 Am. Rep. 1, where an ordinance had been adopted prohibiting coasting on the streets, it was held that the appellee was not liable for an injury occurring as a result of coasting for sport in the presence of the officers and police of the town, the court saying, at page 139: "It is obvious that in the case before us the injury did not result from any defect in the highway. It was produced by the act of those improperly and unlawfully using the highway, which was at the time, and but for the unlawful acts of those improperly using the street, in a reasonably safe and convenient condition for public travel. The

complaint is not that the appellant's son was injured because of defects in the street rendering it unsafe and unfit for public use, but because persons, while engaged in improperly using the street, ran their coasting sled against his son, thereby injuring him. If the appellee is liable for the injury thus produced, it would follow, logically, that it would be liable for an injury caused by loafers lounging upon its streets, occurring in the presence of its officers, if it were known that such persons were accustomed to lounge and loaf upon its streets. To hold incorporated cities liable for such injuries would be unjust, and, we think, without the sanction of law.''

In *Kistner, Exrx.* v. *City of Indianapolis* (1885), 100 Ind. 210, in an action to recover damages for the death of plaintiff's testator caused by the alleged negligence of the city of Indianapolis in permitting several railroads to occupy the street without proper safeguards, it was held that there was no error in sustaining a demurrer to the complaint where it appeared that such negligence was not the proximate cause of the death, but that it resulted directly from the act of an intervening agency. After alleging at great length the duties of the city of Indianapolis with reference to providing safeguards for the protection of persons on the streets, the complaint recited that the injured party was about to cross seven railroad tracks, which were located in Illinois street, when a wagon and a team belonging to the firm of Archdeacon and Company knocked appellant down and threw him under the wheels of a moving train, which was backing up at the same time, and that he was thereby crushed to death. At page 220 the court said: ''It clearly appears from the facts alleged in

each paragraph, that the proximate cause of the death of appellant's testator was the act of the driver of the wagon of Archdeacon & Co., whether such act was negligent or otherwise, and, of course, that the negligence of the Union Railway Company, alleged in each paragraph, was not the proximate cause of such death. The intervening agency here was so direct and positive in its nature and effect that the death of the testator cannot be attributed, we think, to the alleged negligence of the Union Railway Company."

"The breach of duty upon which an action is brought must be not only a cause, but a *proximate cause,* of the damage to the plaintiff. * * * The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred." 1 Shearman and Redfield, Negligence (6th ed.) §26.

Judge Cooley in his work on Torts, page 69, states the rule as follows: "(1) * * * In the case of any distinct legal wrong which in itself constitutes an invasion of the right of another, the law will presume that some damage follows as a natural, necessary and proximate result. Here the wrong itself fixes the right of action; we need not go further to show a right of recovery, though the extent of recovery may depend upon the evidence. (2) When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom; this consequence must not only be shown, but it must be so connected by

averment and evidence with the act or omission, as to appear to have resulted therefrom according to the ordinary course of events, and as a proximate result of a sufficient cause. (3) If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote.''

In applying the doctrine of proximate cause, and in determining what was the efficient cause of the injury in the present case, we are required to apply our everyday judgment as men to ascertain whether or not there has been such a delinquency on the part of the appellee, uninterrupted by any supervening cause, that the act of the appellee in suffering and permitting the wire to be and remain in the river ought justly be held as the efficient cause of the injury of which complaint is made. The test is to be found not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence. The act plainly must have such a connection with the wrong that it stands in relation of cause and effect so that it can be said that it was the duty of the appellee to apprehend that injury might thereby occur to another.

As stated in 1 Shearman and Redfield, Negligence (6th ed.) 34: ''If the negligent acts of two or more

persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.''

The Supreme Court of the United States in *Milwaukee, etc., R. C.* v. *Kellogg* (1877), 94 U. S. 469, 24 L. Ed. 256, said: ''The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place. *Scott* v. *Shepherd* (Squib Case), 2 W. Bl., 892. The question always is: was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear

that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self operating, which produced the injury.''

And in *Claypool* v. *Wigmore* (1904), 34 Ind. App. 35, 71 N. E. 509, where appellee was injured by reason of falling down an elevator shaft, the door to which had been left partially open, it was held that the act of a third party, who accompanied the appellee into the building, in opening the door, was the proximate cause of the accident. The court, after defining and discussing proximate cause, said: ''If it be conceded that the facts show that appellant was negligent in the first instance, they in like manner show, and it is so conceded, that appellee's injury would not have resulted from such negligence, but was the direct and proximate result of the negligent act of an independent, responsible and intervening agency. * * * It cannot be successfully denied that Wallsmith was an intervening, responsible agent. It was his act which was directly responsible for appellee's injury,

without which her injury could not have occurred;
*   *   * ,,

In *McGahan* v. *Indianapolis Nat. Gas Co.* (1895),
140 Ind. 335, 37 N. E. 601, 29 L. R. A. 355, 49 Am. St.
199, the court said: "The rule that an intervening
responsible agent cuts off the line of causation from
the original negligence has been many times recog-
nized by this court."

Ray in Negligence of Imposed Duties (Passen-
gers), pages 669, 670, says: "Where the concurring
cause is the independent, wrongful act of a respon-
sible person, such act arrests causation, being re-
garded as the proximate cause of the injury, the
original negligence being considered merely as the
remote cause. As, in the law, it is the proximate and
not the remote cause which is regarded, he who is
guilty of the original negligence is not chargeable,
but redress must be sought from him who directly
caused the injury.   *   *   *   In civil cases a de-
fendant is not responsible for results, except such as
are natural, proximate and direct, if such conse-
quences are caused by the acts of others, so operating
on his act as to produce the injurious consequences
then he is not liable."

This case differs from *City of Kokomo* v. *Loy,*
*supra,* cited by appellant. The relation of master and
servant existed in that case and the injury complained
of was caused by the negligence of the city in order-
ing him to remove a charge from a loaded cannon.
The cannon belonged to the city, and was being
cleaned and unloaded on lands which were owned and
controlled by the city. In the instant case the appel-
lant's son and Miss Gibson had gone to Riverside
Park on their own account, went boating on the river

over land which appellee did not own, but over which it is alleged in the complaint it had assumed control. The city did not own the motorboats, had no control over them or the persons operating them.

Where there is an intervening responsible agency which directly produced the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition or remote cause, is to be determined by ascertaining whether the agency which intervened, which in this case was the collision of the motorboat and the boat in which Miss Gibson was riding, and the circumstances under which the collision occurred were such that it might have been reasonably expected that such a collision or a similar one would intervene in such a way as to be likely to produce an injury similar to the one which actually occurred. If, under the circumstances, the intervention of the collision in the manner stated might reasonably have been expected in the usual course of events and according to common experience, then the chain of causation extending from the alleged negligent act of the appellee to the death of appellant's son is not broken by the independent intervening agency, and the original alleged negligence of appellee in permitting the barbed wire to remain in the river will be treated as a proximate cause. If, however, the intervening agency was one over which appellee had no control, and was not put in motion by the alleged wrongful act of appellee, and if the character of the intervening agent and the circumstances of the intervention were such as could not reasonably have been expected to occur in the ordinary course of nature and according to

common experience, then such intervening agent will be treated as the sole proximate cause, and the wrongful act of appellee will be treated as a condition.

The question as to whether the intervention of the collision, occasioned as alleged, might reasonably have been expected to occur in such a manner as to be likely to produce the injury complained of in connection with the original act of appellee in permitting the wire to remain in the river is important for the purpose of determining whether the intervention of the intervening agency broke the chain of causation and became the sole and proximate cause. When this question is determined, and it is held that the chain of causation is not broken by the intervention of such agency, then it becomes wholly immaterial whether the particular injury of which complaint is made could reasonably have been expected to occur to appellant's son in the exact manner in which it did occur, provided, of course, that such death was the direct and natural result of appellee's negligent act as alleged in the complaint.

Can it be said as a matter of law, from the facts alleged in the complaint, that the appellee in the exercise of ordinary care ought to have anticipated that, in the natural course of events and according to common experience, the negligence of the operators of some of the motorboats plying on the water of the river would, while racing, negligently run down and capsize smaller boats, and cast the persons riding in such smaller boats into the water of the river and thus endanger their lives by coming in contact with, and becoming entangled in, the wire, which was from six to eight feet beneath the surface of the water?

It must be remembered that the river where appellant's son was drowned was not being maintained as a place for bathing, or where it would be reasonably expected that people would go into the water for that purpose. According to the allegations of the complaint, it was being maintained as a place for boating, not bathing. The appellee therefore owed those who might use the river for the purpose of boating the duty to exercise reasonable care to keep the river in a reasonably safe condition for that purpose. This required the appellee to exercise care commensurate with the dangers likely to occur and reasonably to be anticipated from the use of the river as a place for boating. Can it be said that the appellee was bound to anticipate, or should have anticipated, that two or more motorboats might be racing on the river, and that by reason of the negligence of the operators of such boats a small pleasure boat would be capsized, and the people riding therein would be cast into the water of the river, and would become entangled in the wire embedded in the bottom of the river and be drowned? Was this one of the dangers likely to occur and which should have been anticipated and avoided by appellee? We think these questions must be answered in the negative.

The proximate cause is the efficient cause, that is, the one that necessarily sets the other causes in motion. *Bloom* v. *Franklin Life Ins. Co.* (1884), 97 Ind. 478, 49 Am. Rep. 469. The act of the appellee in permitting the wire to remain in the river did not set the other causes in motion. It was a mere incident in the chain of circumstances leading up to the death of

appellant's son. The efficient, the proximate cause which intervened and caused his death, was the negligence of the persons in charge of the motorboats. They, and they alone, must be held responsible for the unfortunate occurrence. Their negligence was wholly independent of the act of the appellee, and is to be charged with the disaster.

The allegation that the appellee had placed a motorboat on the river in charge of representatives of the appellee, whose duty it was to make daily inspections of the river and to keep it free from obstructions, and to protect the lives of those who were boating on the river, does not make the alleged negligence the proximate cause of the injury.

The court properly sustained the demurrer to the complaint. Judgment affirmed.

Remy, P. J., not participating.