ANDREW K. GALBREATH v. ENGINEERING CONSTRUCTION CORP.

[No. 271A34. Filed September 9, 1971. Rehearing denied October 12, 1971. Transfer denied January 13, 1972.]

*Hillis & Hillis,* of Logansport, *Cook and Cook,* of Kokomo, for appellant.

*Rocap, Rocap, Reese & Young,* of Indianapolis, *Miller, Tolbert, Hirschauer & Wildman,* of Logansport, for appellee.

SULLIVAN, P.J.—Plaintiff-appellant suffered negative judgments upon the two paragraphs of his complaint for personal injury damages. The first paragraph of Galbreath's complaint alleges that the defendant was negligent in detonating dynamite to close to a pressure gas main owned by Northern Indiana Public Service Company (NIPSCO), causing the gas line to rupture. Plaintiff, a NIPSCO employee, was repairing the ruptured main when the escaping gas ignited and exploded. Plaintiff was thereby injured. Defendant was allegedly further negligent in leaving a backhoe engine in opera-

tion and positioned just above the excavation where the gas line had been ruptured.

Galbreath's complaint contained a second paragraph alleging that defendant used dynamite to blast rock, an ultra- and extra-hazardous activity especially in such close proximity to pressure gas mains, so as to create absolute liability against the defendant for plaintiff's injuries. The trial court sustained defendant's demurrer to the "absolute liability" paragraph of plaintiff's complaint. The first issue presented for review, therefore, is whether the trial court erred in sustaining the demurrer and in entering judgment for defendant upon that paragraph of the complaint.

Plaintiff-appellant argues that the defendant is liable for *any* injury proximately caused by the blasting operation. He argues that once a tort feasor releases a destructive force, he is liable for foreseeable damage which follows so long as the destructive force remains loose and uncurbed. Acknowledging that Indiana has not yet imposed strict liability in such situations, plaintiff nevertheless asserts that it would be too thin a distinction for the court to hold that where a person is injured by falling debris (*Wright* v. *Compton* [1876], 53 Ind. 337), or that where a window is shattered by concussion some distance away (*Enos Coal Mining Co.* v. *Schuchart* [1963], 243 Ind. 692, 188 N. E. 2d 406), there is liability and recovery without proof of negligence, yet deny recovery to a person who is injured by gas escaping from a broken main caused by blasting under the same or similar circumstances.[1]

---

1. It has been said that with the advent of negligence law, the need for absolute liability in the so-called "extra-hazardous activity" area is gone and should at least be restricted very narrowly. This viewpoint was well paraphrased as follows:

"Originally, the common law action of trespass to the person imposed absolute liability for all damage directly caused by a defendant's behavior. . . . However, judges realized that to promote private enterprise liability then imposed for pure accident would have to be tempered. Accordingly, courts began to require some fault on a defendant's part before holding him liable for a plaintiff's injuries. Thus, the fault principle, known today as negligence, gave rise to

In answer to this contention appellee states and we agree that there are no Indiana cases—indeed no cases which have been found from other jurisdictions—in which the rule of

the complex tort for unintended harm." *The Effect of the Palsgraf Doctrine in Indiana,* 29 Ind. Law J. 622, 622-623.

To the contrary and perhaps more reliably, Dean Prosser notes:

"So much can be collected in the way of cases imposing liability without any vestige of moral blame that a number of writers have maintained that negligence is rapidly losing, if it has not entirely lost, its character as a branch of 'fault' liability, . . . and that negligence should therefore largely be jettisoned. This perhaps begs the question, by assigning to 'fault' a criminal law connotation of moral blame which it seldom has been given in the law of torts. There is a broader sense in which 'fault' means nothing more than a departure from a standard of conduct required of a man by society for the protection of his neighbors;

\* \* \* \*

"But even beyond all this, the last hundred years have witnessed the overthrow of the doctrine of 'never any liability without fault,' even in the legal sense of a departure from reasonable standards of conduct. It has seen a general acceptance of the principle that in some cases the defendant may be held liable, although he is not only charged with no moral wrongdoing, but has not even departed in any way from a reasonable standard of intent or care.

\* \* \* \*

"The courts have tended to lay stress upon the fact that the defendant is acting for his own purposes, and is seeking a benefit or a profit of his own from such activities, and that he is in a better position to administer the unusual risk by passing it on to the public than is the innocent victim. The problem is dealt with as one of allocating a more or less inevitable loss to be charged against a complex and dangerous civilization, and liability is imposed upon the party best able to shoulder it. The defendant is held liable merely because, as a matter of social adjustment, the conclusion is that the responsibility should be his. This modern attitude, which is largely a thing of the last four decades, is of course a far cry from the individualistic viewpoint of the common law courts.

\* \* \* \*

". . . [I]t may be questioned whether 'fault,' with its popular connotation of personal guilt and moral blame, and its more or less arbitrary legal meaning, which will vary with the requirements of social conduct imposed by the law, is of any real assistance in dealing with such questions, except perhaps as a descriptive term. It might be quite as easy to say that one who conducts blasting operations which may injure his neighbor is at 'fault' in conducting them at all, and is privileged to do so only in so far as he insures that no harm shall result, as to say that he is not at fault, but is liable nevertheless. If he is not 'at fault' because the social desirability of the blasting justifies the risk, his conduct is still so far socially questionable that it does not justify immunity. The basis of his liability in either case is the creaton of an undue risk of harm to other members of the community." Prosser on Torts (3d Ed.) § 74, pp. 507-509.

absolute liability has been extended to facts similar to those before us. Appellee thus logically concludes that the rule of strict liability regarding the use of explosives is concerned only with occurrences of trespassing debris or concussion damage.

Detailed research discloses no case in the United States permitting recovery for blasting damage or injury upon an absolute liability concept without actual trespass by debris or damage directly inflicted by concussion vibrations.[2] See 20 ALR 2d 1372 at 1375, and supplements thereto. Absolute liability has been imposed in Indiana in the latter two situations, *Wright* v. *Compton, supra,* and *Enos Coal Mining Co.* v. *Schuchart, supra,* but has not heretofore been extended beyond those arbitrary factual limitations.

## ABSOLUTE LIABILITY EXTENDS TO INJURY PROXIMATELY CAUSED BY USE OF EXPLOSIVES, WHETHER INFLICTED BY DEBRIS, CONCUSSION, OR OTHERWISE

It seems to us, however, that if by direct concussion caused by a defendant's use of explosives, a substance equally hazardous is released, which substance in the ordinary experience of man is likely to cause damage or injury if unconfined and does so, we must hold the originator of the concussion responsible for the foreseeable consequences. If, therefore, as the existing law in Indiana presently requires, use of explosives is acknowledged as extra-hazardous so as to impose absolute liability for certain damage or injury proximately caused thereby without regard to the exercise

2. Recovery has been disallowed under a claim of absolute liability, however, in a factual situation not involving damage caused by debris or by concussion. *Gronn* v. *Rogers Construction, Inc.* (1960) 221 Ore. 226, 350 P. 2d 1086; *Madsen* v. *East Jordan Irr. Co.* (1942), 101 Utah 552, 125 P. 2d 794; *Foster* v. *Preston Mill Co.* (1954), 44 Wash. 2d 440, 268 P. 2d 645 (all of which involve claims for damages suffered when defendant's blasting concussion and noise caused female mink being commercially raised to devour their young). In all three cases, absolute liability was rejected upon the ground that such consequence was not within the extraordinary risk created by blasting either as to the type of harm threatened or to the persons or property within the scope of danger.

of reasonable care, it is absurd to reject such absolute liability for damage or injury also proximately caused though not immediately or directly so. Compare *Gronn, Madsen* and *Foster* cases, *supra,* at Footnote 2.

It is generally recognized that artificial distinctions such as that heretofore maintained in blasting cases are for the purpose of injecting a real or imagined public policy consideration at an arbitrary point in the process of determining an actor's responsibility for injurious acts. As was eloquently stated by Judge Andrews in his dissent in *Palsgraf* v. *Long Island R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99, 103-104:

> "What we do mean by the word 'proximate' is that, because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics. . . . [W]hat the prudent would foresee . . . may have some bearing, for the problem of proximate cause is not to be solved by any one consideration. It is all a question of expediency. There are no fixed rules to govern our judgment. . . . There is in truth little to guide us other than common sense. . . . The proximate cause, involved as it may be with many other causes, must be, at the least, something without which the event would not happen. The court must ask itself whether there was a natural and continuous sequence between cause and effect. Was the one a substantial factor in producing the other? Was there a direct connection between them, without too many intervening causes? Is the effect of cause on result not too attenuated? Is the cause likely, in the usual judgment of mankind, to produce the result? Or, by the exercise of prudent foresight, could the result be foreseen? Is the result too remote from the cause, and here we consider remoteness in time and space? . . . We draw an uncertain and wavering line, but draw it we must as best we can."

It is folly, however, and does the law no service to arbitrarily implement social policy without regard to logic or consistency. The latter viewpoint was well stated as follows:

> "Under the traditional approach it is a manifest contradiction to hold that a duty to the world has been breached, yet exonerate the defendant because of public policy. In effect,

the court determines that, although there is a breach of duty, the defendant has committed no actionable wrong. It is far more logical to include consideration of public policy with the determination of the defendant's duty. If for public policy reasons liability must be restricted, then his conduct in the light of all circumstances is not unreasonable to any plaintiff. As life in modern society grows more complex and knowledge increases, the concepts of unreasonable and foreseeable risk must also progress, and contemporary judges and jurors are the means by which it should expand and grow." *The Effect of the Palsgraf Doctrine in Indiana*, 29 Ind. Law J. 622, at 627-628.

We now therefore hold that if acknowledged extra-hazardous activity, e.g., blasting, proximately causes damage, whether by direct impact of debris or by concussion waves, or otherwise, the actor is absolutely liable for such damage without regard to his exercise of reasonable care in the carrying out of such activity.[3]

While it might be considered appropriate to reject the concept of "proximate cause" as a measure of the extent to which one using explosives can be held absolutely liable, and to adopt in its place a standard such as the "orbit of danger" test enunciated by Judge Cardozo in the *Palsgraf* case, *supra*, we do not deem it to be within our prerogative to do so. There is perhaps merit in the argument that foreseeability is misplaced as an element of proximate cause and is proper only in the consideration of whether there exists a duty between a particular plaintiff and a particular defendant. Of course, in absolute liability situations, the "duty"[4] is imposed by the

---

3. Such actor-defendant, however, is not precluded from interposing an appropriate affirmative defense. See *Perfection Paint & Color Co.* v. *Konduris* (1970) 147 Ind. App. 106, 258 N. E. 2d 681; *Greeno* v. *Clark Equipment Co.* (N. D. Ind. 1965), 237 F. Supp. 427, 13 ALR 3d Anno. 1057 at 1101; Prosser on Torts (3d Ed.), § 78, pp. 538-540.

4. Professor Harper perhaps correctly notes:

. . . "[T]he duty concept is of value only where defendant is morally culpable, because duty is primarily a moral concept. It is so shot through with moral connotations that it actually misdescribes the character of the defendant's conduct in cases where there is no moral fault.

\* \* \* \*

"In modern text books it is sometimes said that the duty owed by defendant is to prevent the injury at all costs. But by hypothesis

nature of the activity conducted by the defendant and is without regard to the care or lack thereof exercised in the course of that activity. Foreseeability, however, is very relevant in absolute liability cases, if not from a proximate cause aspect, then from the standpoint of the scope of harm, the orbit of foreseeable risk, which embraces the particular extrahazardous activity. The latter concept might at first blush appear to merge very ethereally with and into the element ordinarily injected into proximate cause limitations of liability, i.e., that the injury or damage produced must be of that class of injury or damage which should have been reasonably anticipated. Various scholars have wisely although not without difficulty drawn the distinction. *The Effect of the Palsgraf Doctrine in Indiana,* 29 Ind. Law J. 622; Harper, *Liability Without Fault and Proximate Cause,* 30 Mich. L. Rev. 1001; 100 ALR 2d Anno. 942; 155 ALR Anno. 157.

Judge Cardozo stated it as follows:

"The law of causation, remote or proximate, is thus foreign to the case before us. The question of liability is always anterior to the question of the measure of the consequences that go with liability. If there is no tort to be redressed, there is no occasion to consider what damage might be recovered if there were a finding of a tort. We may assume, without deciding, that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences, however novel or extraordinary." *Palsgraf* v. *Long Island R. Co., supra,* 162 N. E. 99, 101.

Stated another way perhaps even more simply:

. . . " 'negligence is tested by foresight but proximate cause is determined by hindsight,' and that 'although a rigorous definition of proximate cause' continued to elude the court, 'nevertheless it is clear . . . that it is not a matter of fore-

in cases of strict liability, the defendant could not prevent the injury by taking reasonable precautions. Hence, he owes a duty not to indulge in the conduct at all or to perform the impossible. It is not very intelligible to state the law in terms of duties which it is impossible to perform." Harper, *Liability Without Fault and Proximate Cause,* 30 Mich. L. Rev. 1001, 1013-1014.

seeability,' since the court had consistently followed and would reaffirm the doctrine to the effect that 'what a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues,' that 'if the act itself is negligent,' because the act was 'one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others,' then he is 'liable for all its natural and proximate consequences, whether he could have foreseen them or not.' " 100 ALR 2d Anno. 942, 977.

Notwithstanding the possible merit of discarding the foreseeability concept of proximate cause as essential to absolute tort liability, if not to liability for negligence as well, we are bound by the presence of that element in the existing law of Indiana relating to absolute liability. In *Enos Coal Mining Co.* v. *Schuchart, supra,* the court noted:

"Where there is evidence of a series of explosions on or about the same time from the identical source in the same area, resulting in similar characteristics of injury or damage, it can hardly be contended that such evidence is not relevant or pertinent to the issue of proximate cause." 243 Ind. 692, 705.

Professor Harper advances support for the current status of Indiana law as follows:

"If defendant has indulged in extra-hazardous conduct at all, he has engaged in conduct which may be the basis for legal liability. It is awkard to say that he has indulged in conduct which is the basis for liability to some persons for some general classes of injuries but not to other persons for other types of harms. It is much more intelligible to state that the defendant has engaged in a type of conduct which is a sufficient basis of liability, and then determine what consequences of such conduct he is liable for. By this method the three considerations of policy which Judge Andrews employed to determine the character of the consequences of defendant's negligence may here be employed in the same manner. If one does not like the term 'proximate consequence' one need not use it. It would seem, however, that all the dogmas which until the last twenty-five

years determined whether consequences of 'negligence in the air' were proximate are appropriate for determining whether consequences of extra-hazardous conduct entail liability." 30 Mich. L. Rev. 1001, 1014-1015.

The key, therefore, to one's duty in Indiana to respond in damages for such extra-hazardous activity is causation—proximate causation. This is all that such actor can expect the law to provide by way of protection to his activity. To hold otherwise is to speak from both sides of the judicial mouth—it is to say that use of explosives is so inherently dangerous as to require response in damages if that activity causes harm, yet to say at the same time that unless the effect is immediate and direct an injured party is without relief. A false and fictional distinction based upon the nature of the effect rather than upon legal proximateness has no other counterpart and is found nowhere else in tort law. Accordingly, we reject such fiction.

In *Perfection Paint & Color Co.* v. *Konduris* (1970), 147 Ind. App. 106, 258 N. E. 2d 681, and in *Cornette* v. *Searjeant Metal Products, Inc.* (1970), 147 Ind. App. 46, 258 N. E. 2d 652, Indiana accepted the concept of absolute liability as it concerns manufacturers and in so doing adopted Section 402 A of the Restatement of Torts (1964 2d Ed.), which treats absolute liability of product sellers as follows:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

It must be noted that as to the absolute liability of product sellers or manufacturers, no distinction is made in the Restatement, nor in the Indiana cases adopting the Restatement view, between direct, in the sense of immediate, as opposed to indirect effect, so long as the causation of injury or damage is proximate. We, of course, would not engraft such distinction upon the doctrine of absolute liability merely because the defendant here is a user of explosives as opposed to a product manufacturer or seller.

To be sure, an act which merely furnishes a condition by which subsequent injury is made possible is not a proximate cause of such injury. *Kelley* v. *Skeen* (1968), 143 Ind. App. 387, 240 N. E. 2d 837; *Slinkard* v. *Babb, Wilson* (1953), 125 Ind. App. 76, 112 N. E. 2d 876. But as stated in *Milwaukee & St. P. R. Co.* v. *Kellogg* (1877), 94 U. S. 469, 474-475, 24 L. Ed. 256:

"The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, . . . . The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?"

And though not an "absolute liability" case, *New York Central R. Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 49-50, 211 N. E. 2d 502, exhaustively treats proximate cause in the

same sense as we are bound to consider it in the cause before us:

"A proximate cause of an injury is the cause which sets in motion the chain of circumstances leading up to the injury and has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. (Citations omitted).

"The Indiana courts regard foreseeability of injury as an essential element or fundamental test of proximate cause, and hold that negligence will not be deemed to have been the proximate cause of an injury so as to impose liability therefor unless the consequence was one which, in the light of attending circumstances, ought, could, or should reasonably have been foreseen or anticipated. (Citations omitted). "Where there is an independent responsible agency intervening between the defendant's negligence and the injury, the question whether the original negligence is the proximate cause of the injury is to be determined by whether the agency might have been reasonably expected under the circumstances to intervene in such a way as to be likely to produce an injury similar to the one actually caused. (Citations omitted).

"Generally, where harmful consequences are brought about by intervening independent forces the operation of which might have been reasonably foreseen, then the chain of causation extending from the original wrongful act to the injury is not broken by the intervening and independent forces and the original wrongful act is treated as a proximate cause. (Citations omitted).

"An intervening cause with respect to the doctrine of proximate cause does not mean a concurrent or contributing cause, but a superseding cause, which is itself the natural and logical cause of the term or the immediate and direct cause of the injury." (Citations omitted).

More recently, in *Stauffer* v. *Ely* (1971), 149 Ind. App. 93, 270 N. E. 2d 889, 892, we said:

"The proximate cause of an injury is the efficient cause, the one that necessarily sets the other causes in operation.

(Citation omitted). The mere intervention, however, of an independent negligent act, as in this case, will not in and of itself relieve the original negligent actor of legal responsibility. (Citations omitted). Under Indiana law an intervening negligent act breaks the chain of liability only if that intervention could not have been reasonably foreseen by the original negligent actor. (Citation omitted). In short, reasonable foreseeability is still the fundamental test of proximate cause, and this rule is not changed by the existence of an intervening act or agency." (Citation omitted).

As an alternative to its argument against extension of absolute liabilty, appellee maintains that plaintiff here was not within the "zone of risk or area of foreseeable danger" and cannot therefore recover upon the absolute liability theory. Even if we are to consider the zone of risk or orbit of danger espoused by Judge Cardozo, whether plaintiff was within the foreseeable zone of that risk or danger is a matter for resolution by the trier of fact. Resolution of that question, therefore, is of no aid to appellee in this appeal, the question having never been presented to the jury.

Likewise, whether or not the igniting agent, such as a backhoe engine in operation as here evidenced, a passer's-by cigarette or a spark from a passing automobile, was foreseeable as an intervening cause or normal to the situation which the defendant's act created, and therefore not a *superseding* intervening cause, is a question of fact even under the absolute liability theory herein approved. Absent effective and superseding intervening cause, we cannot subscribe to a view which would deny absolute liability for blasting activity upon the basis that plaintiff's injury here was, as a matter of law, too remote or not proximately caused by the activity. Such injury and consequence is quite within the bounds of foreseeability as that concept determines legal causation. See *Hersum* v. *Kennebec Water District* (1955), 151 Me. 256, 117 A. 2d 334; 53 ALR 2d 1072.

We confess that we have been unable to divine continuity,

logic or consistency in the various theories, approaches, articles and decisions bearing upon the arbitrary curtailment of responsibilty for one's injurious acts. We are nevertheless charged with the duty to decide this case. Accordingly, we have employed our understanding of the spirit as well as the letter of the law, and a dash of what we hope to be common sense, to reach the result in the case before us. We have extended—knowingly so—the absolute liability doctrine to all instances in which the damage or injury is proximately caused by the extra-hazardous activity. If, as opposed to logic and the persuasive effect of long established tort concepts, public policy dictates otherwise, the Indiana General Assembly is free to act.

For the foregoing reasons, the ruling of the trial court upon defendant's demurrer to plaintiff's second paragraph of complaint is deemed erroneous and the judgment for defendant upon that paragraph is hereby reversed.

In addition to the holding set forth immediately above, we must also consider error alleged by plaintiff-appellant to have been committed with reference to the verdict rendered in favor of defendant upon the negligence paragraph of plaintiff's complaint since those matters are likely to arise upon retrial, and concern certain instructions given or refused.

## REFUSAL OF CERTAIN PLAINTIFF'S TENDERED INSTRUCTIONS PRESENTS NO QUESTION FOR REVIEW

We do not address ourselves to the correctness of the trial court's refusal of certain plaintiff's tendered instructions for the reason that all of the instructions given by the court are not set forth by plaintiff. It is possible, of course, for the subject matter of the instructions refused by the court to have been covered by other instructions given. We cannot, therefore, assume error in the refusal of the two plaintiff's instructions as here urged.

## ERRONEOUS AND MISLEADING STATEMENTS OF LAW CONCERNING PROXIMATE CAUSE AS AFFECTED BY INTERVENING AGENCIES CONSTITUTE PREJUDICIAL ERROR

Plaintiff-appellant attacks as erroneous, and prejudicially so, defendant's tendered Instructions 3, 4 and 7 given by the court. In general, the plaintiff's objections to those instructions may be said to coalesce and emphasize a single recurring alleged error or omission, i.e., that the instructions misstate the law as it relates to proximate cause as an essential to liability.

Said instructions are as follows and the portions thereof particularly under attack are emphasized for clarity:

### Defendant's Instruction No. 3

"One of the questions raised in this case is whether or not the acts of Northern Indiana Public Service Company, a third person not a party to this action, were an independent intervening cause of any injury to the plaintiff so that no act of the defendant can be held to be the proximate cause of such injury to the plaintiff.

"If you find from a preponderance of the evidence that the defendant herein was guilty of negligence, I instruct you that before an act or omission which, constitutes negligence may be actionable, *it must directly produce* as its natural consequence an injury to another and if a party does an act, but before any injury results a third person does some act or omits to perform some act, *and the act or omission of such third person is an immediate cause of the injury, such third person is responsible for such injury and not the party guilty of the first negligence.* The law looks to the proximate and not the remote cause. Therefore, if you should find as a fact in this case that the defendant caused the breaking of the main in question, and that such breaking caused the leakage of the gas into the atmosphere, *I instruct you that the leakage of the gas was only a remote cause, if you further find that some other agency acted upon this gas to cause it to ignite to plaintiff's injury and that such agency in igniting the gas would be the proximate cause and the breaking of the main only a remote cause.*"

## Defendant's Instruction No. 4

"One of the elements of proof on the part of plaintiff in this case is that of proximate cause. I instruct you that an essential element of proximate cause is the requirement that the result must be such as might reasonably have been anticipated in the ordinary experience of men. In applying this rule *wherein the alleged negligence merely created a condition by which the injury was made possible and the subsequent independent act of an intervening agency caused the injury,* it is necessary that not only the type of injury should have been reasonably anticipated by defendant, but that the intervention of the independent agency should have been anticipated by defendant. *Therefore, if you find in this case that the defendant should not have anticipated the intervention of the independent agency, I instruct you that plaintiff has failed on his burden of proof.*"

## Defendant's Instruction No. 7

"I instruct you that if you find from the facts in this case that the defendant put his servants at the disposal and under the control of Northern Indiana Public Service Company for the performance of services for it and that said servants did perform acts for Northern Indiana Public Service Company, while under their control, such servants, in respect to their acts in that service, are to be dealt with as the servants of Northern Indiana Public Service Company and not of the defendant.

"And if you further find from the facts in this case *that the ignition of the gas which resulted in plaintiff's burn injury was due to the actions of defendant's agents and servants* while serving in such capacity as the agents and servants of Northern Indiana Public Service Company, *then I further instruct you that such conduct cannot be the basis of any liability for and on behalf of the defendant in this cause of action* and I instruct you to find for the defendant on this allegation of negligence."

We deem the three instructions hereinbefore set forth to be mandatory. As we said in *Stauffer* v. *Ely* (1971), 149 Ind. App. 93, 270 N. E. 2d 889, 891:

"A mandatory instruction is defined by Judge Arterburn in *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N. E. 2d 923, as one which attempts 'to set up a factual situation directing the jury to a certain result * * *.' He also says in this opinion that 'although mandatory instruc-

tions are not necessarily bad, we look with disfavor upon their use because of the risk involved in making a statement of the evidentiary facts under which the law would mandate a certain result.' (Citation omitted).

\* \* \* \*

"Furthermore, it is not necessary that an instruction contain the words 'you shall return a verdict' in order for it to be mandatory under the law of this state. If the practical result of the language used is the same, then the instruction is mandatory in nature."

Defendant's Instruction No. 3 states in effect that defendant's blasting activity was, as a matter of law, but a remote and therefore not a proximate cause of plaintiff's injury. The instruction is patently erroneous and requires reversal without further comment. *Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N. E. 2d 847; *Northern Ind. Transit, Inc.* v. *Burk* (1950), 228 Ind. 162, 89 N. E. 2d 905; *Stauffer* v. *Ely, supra; Ryan* v. *Leach* (1966), 139 Ind. App. 14, 215 N. E. 2d 877.

The final sentence of defendant's Instruction No. 4, concerning anticipation of an intervening independent agency, presupposes the existence as conclusive facts, of the other elements of the principle of proximate cause, i.e., whether defendant's negligence created a mere condition or was in fact a proximate cause to which other causes contributed. Such additional elements may or may not have been determined by a jury, in their sole discretion, to have existed. The mandatory instruction, therefore, was erroneous. *Elder* v. *Fisher, supra; Northern Ind. Transit, Inc.* v. *Burk, supra.*

Defendant's Instruction No. 7 disregards defendant's act in permitting gas to escape as a possible proximate cause of plaintiff's injury notwithstanding the possibility that the "immediate" cause, i.e., ignition of the gas, was occasioned by an intervening agency. Upon the basis of the authorities hereinbefore cited, it is apparent that defendant's Instruction No. 7 is erroneous.

Our discussion of proximate cause with reference to the absolute liability paragraph of plaintiff's complaint bears

upon our determination concerning defendant's tendered instructions and should be considered in relation thereto. As stated most recently in *Stauffer* v. *Ely, supra:*

> "The proximate cause of an injury is the efficient cause, the one that necessarily sets the other causes in operation. *Sarber* v. *City of Indianapolis* (1920), 72 Ind. App. 594, 126 N. E. 330. The mere intervention, however, of an independent negligent act, as in this case, will not in and of itself relieve the original negligent actor of legal responsibility. *Engle* v. *Director General of Railroads* (1922), 78 Ind. App. 547, 133 N. E. 138; *Cleveland, C., C. & St. L. Ry. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822. Under Indiana law an intervening negligent acts breaks the chain of liability only if that intervention could not have been reasonably foreseen by the original negligent actor. *Leatherman* v. *Gateway Transportation Co.* (1964) 7 Cir., 331 F. 2d 241. In short, reasonable foreseeability is still the fundamental test of proximate cause, and this rule is not changed by the existence of an intervening act or agency. *Phares* v. *Carr* (1952), 122 Ind. App. 597, 106 N. E. 2d 242.
>
> \* \* \* \*
>
> "As we have indicated the missing element in this instruction is the second basis for liability in that Ely and the Truck Driver both could have been guilty of negligence which was the proximate cause of the accident. It is not a complete statement of the law from the facts set forth in the instruction." 270 N. E. 2d 889, 892.

Since we have found the foregoing instructions to constitute reversible error for the reasons stated, we do not address ourselves to other possible errors, omissions or misstatements contained in said instructions as alleged by plaintiff-appellant, nor do we consider any other instructions given by the court which may, in law, or as alleged by plaintiff, be erroneous or otherwise defective.

Judgment reversed with instructions to reinstate pleading paragraph 2 of plaintiff's complaint and to grant plaintiff retrial upon pleading paragraph 1 of said complaint.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 273 N. E. 2d 121.