JOHN E. YUHASZ v. NANCY ZACHARIAS MOHR, AS ADMINISTRATRIX OF THE ESTATE OF HENRY ZACHARIAS, DECEASED.

[No. 3-173A1. Filed March 6, 1974.]

Ronald V. Aungst, Lyons, Aungst & Guastella, of Valparaiso, William G. Conover, Conover, Claudon & Billings, of Valparaiso, for appellant.

Samuel J. Furlin, Spangler, Jennings, Spangler and Dougherty, of Gary, for appellee.

GARRARD, J.—The central issue in this case is whether the plaintiff, John E. Yuhasz (Yuhasz) was an employee of a corporation known as Ace Store Fixtures, Inc. (Ace) at the time he received certain injuries and was thereby precluded from bringing a common law action for damages against his fellow employee.[1] When the case was tried, the parties agreed to submit first to the jury the question of whether Yuhasz was an independent contractor or an employee. The jury returned a verdict adverse to plaintiff on the issue, and judgment was thereafter entered for defendant. A timely motion to correct errors was overruled and this appeal followed.

Before proceeding to the employment issue, three other questions raised by the motion to correct errors should be disposed of.

1. See, IC 22-3-2-6, 22-3-2-13 (Burns §§ 40-1206, 1213) and cases decided thereunder.

During the course of pretrial discovery, Yuhasz gave notice that he desired to take the deposition of one Dr. Leon Armalavadge by videotape recording for use at the trial. The defendant moved for a protective order pursuant to Rule TR. 26(C) to prohibit videotaping the deposition. The protective order was granted, and a subsequent motion to reconsider was denied. These actions by the trial court are the first asserted errors.

However, it is admitted that the deposition related solely to damages. Since the jury found against plaintiff on the issue of liability, the damage issues are not relevant to the appeal. Accordingly, any potential error in granting the protective order in question is harmless.[2] See: *Chestnut* v. *Southern Indiana R. Co.* (1901), 157 Ind. 509, 62 N.E. 32; *Kosanovic* v. *Ivey* (1968), 142 Ind. App. 481, 235 N.E.2d 501; *Adkins* v. *Poparad* (1943), 222 Ind. 16, 51 N.E.2d 476.

The second error asserted is that defendant improperly referred to the Indiana Workmen's Compensation Act both during the trial and in final argument. These issues were waived by plaintiff's failure to object to the reference that was made,[3] and his failure to include the final argument in the record.[4]

2. While we are tempted to consider the subject of audio and video presentation of deposition evidence, we have, somewhat reluctantly, concluded not to do so. We believe that the potential questions involved should best be left to handling by counsel and the trial courts, and should be considered by this court only as specific and critical problems arise. Both the trustworthiness of the record made, and the propriety of presenting it to the trier of fact in that form could in a given instance exist as categories of concern. Some of the specific questions are enumerated in Marlboro Products Corp. v. North Am. Philips Corp. (D.C. N.Y. 1972), 55 F.R.D. 487.

As a matter of practical consequence, it would appear that in addition to protective orders pursuant to Rule TR. 26(C), some of these matters might be brought before the trial court by motion under Rule TR. 7(B) for an order pursuant to Rule TR. 30(B)(4) to assure that the recorded testimony will be accurate and trustworthy.

3. *Harrison* v. *State* (1972), 258 Ind. 359, 281 N.E.2d 98; *Coakley* v. *State* (1972), 152 Ind. App. 280, 283 N.E.2d 392.

4. *Stephens* v. *State* (1973), 260 Ind. 326, 295 N.E.2d 622; *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160.

Next, as a specification that the verdict was contrary to law, Yuhasz's motion to correct errors asserts that the Industrial Board is without jurisdiction of *this* case, and if the verdict is permitted to stand, Yuhasz will be left without a forum. The contention is without merit. Furthermore, no sound purpose would be served by an exposition of the principles of law involved. It is sufficient that a reading of the record clearly discloses that Yuhasz has filed with the Industrial Board his Form 9 application regarding this occurrence and these same injuries.[5]

Finally, Yuhasz asserts that the jury's verdict is contrary to the evidence and is contrary to law. This presents the single appealable issue as to whether Yuhasz was necessarily an independent contractor under the evidence presented.[6] In considering this question, we examine the evidence most favorable to the defendant, together with all the reasonable inferences which may be drawn therefrom. *Hinds* v. *McNair* (1955), 235 Ind. 34, 129 N.E.2d 553.

> "It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669.

In this context we turn to the relevant law and the facts.

The primary rule long established in Indiana is that the determination of whether one is an independent contractor must be made upon a consideration of all the facts and circumstances of the given case. No single rule or checklist can be formulated upon which the rela-

---

5. As to the dilemma potentially confronting an attorney from the possibility of securing different answers from each tribunal on the issue of "employee", see e.g. *Garrigus* v. *Kerns* (1961), 134 Ind. App. 240, 178 N.E.2d 212, where the employer was estopped from changing his position.

6. On appeal from a negative judgment, nothing is presented by the assertion that the verdict or decision is contrary to the weight of the evidence. *State Farm Life Insurance Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886.

tionship of the parties can be unfailingly determined. *Nash* v. *Meguschar* (1950), 228 Ind. 216, 91 N.E.2d 361; *Allen* v. *Kraft Food Co.* (1948), 118 Ind. App. 467, 76 N.E.2d 845.

In *Arthur* v. *Arthur* (1973), 156 Ind. App. 405, 296 N.E. 2d 912, this court recently quoted with approval the following general definition of "independent contractor" previously set forth in *Clark* v. *Hughey* (1954), 233 Ind. 134, 136-137, 117 N.E.2d 360, 361:

> "Perhaps one of the most frequently quoted is to the effect that an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work." 27 Am. Jur., *Independent Contractors*, § 2, p. 481.

> "When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer, does not render the person contracted with to do the work a servant." *Prest-O-Lite* v. *Skeel* (1914), 182 Ind. 593, 597, 106 N.E. 365, 367.

> "The question of whether a particular workman is an employee or an independent contractor is ordinarily one of mixed law and fact." Small, *Workmen's Compensation Law of Indiana*, § 4.2, p. 65.

Additional clarification is provided by some of the other cases.

The court, in *Marion Malleable Iron Works* v. *Baldwin* (1924), 82 Ind. App. 206, 145 N.E. 559 stated:

> "A contractor is one who makes an agreement to do a piece of work, retaining in himself control of the means, method and manner of producing the result to be accomplished, neither party having the right to terminate the contract at will." (Quotation approved: *Pearson Company, Inc.* v. *McDermid* (1941), 109 Ind. App. 228, 31 N.E.2d 642.)

In *Allen* v. *Kraft Food Co.* (1948), 118 Ind. App. 467, 471, 76 N.E.2d 845, 847, the court observed:

"The *power* or *right* to command the act and to direct or control the means, manner or method of performance has been recognized in this state as the 'real' test. This court has recognized it as the 'decisive' test." (citations omitted) (emphasis in original opinion)

The facts at bar follow. In December, 1967, Ace was a corporate business engaged in the sale and installation of all varieties of store fixtures and equipment. For some time the business had simply consisted of Henry Zacharias (Zacharias), president of the corporation and its sole salesman, and a Mrs. Lois Gothard, who acted as bookkeeper and general manager. (Zacharias' father was vice-president of the corporation and spent time at its office, but according to the testimony was not actually involved in the business.)

The company had prospered to the point where Zacharias could no longer keep up with it, and accordingly, Ace advertised for a salesman. Yuhasz, who had been unemployed for nearly a year, applied and was accepted.

Some two weeks later, while Yuhasz was still "in training", he accompanied Zacharias to call upon a customer in South Bend. As they were returning to Gary with Zacharias at the wheel, the car left the road and crashed, injuring Yuhasz and killing Zacharias.

The agreement between the parties was verbal. The pay was to be a straight commission of 40% of the net profits of the sales made by Yuhasz. The customers would pay Ace, and Ace would pay Yuhasz. At the time of the crash Yuhasz had been paid nothing, and he and Zacharias had never actually discussed the amount of Yuhasz's drawing account, reimbursement for expenses, deductions for social security and taxes, or fringe benefits such as pension or profit sharing.[7]

---

7. Yuhasz's counsel would attach considerable significance to the absence of provision for these items in the original discussion. However, when one considers the parties (i.e. an applicant that has been unemployed for nearly a year, and a virtual two-man company that had not hired salesmen before) together with the brief period of service wherein the applicant was not yet earning commissions; a jury might reasonably infer that the absence of a concrete resolution of these aspects of the relationship was merely a reflection of the expertise and priorities that were brought to the bargaining table.

However, Mrs. Gothard presumed she would set up drawing and expense accounts and make the necessary payroll deductions for taxes, etc.

It appears that the workday commenced at 8:00 a.m., and Yuhasz reported to the office each morning at that time during the training period. When he went on his own he could either come in, or if he had an uncompleted job, he could call in and go directly to the job. How late in the day he worked was up to him and his desire for commissions. After his training was completed he would have used the company office as necessary.

During the training period he accompanied Zacharias on customer calls to observe the method and approach to be used. He was introduced to these customers as representing Ace. He was to be furnished business cards bearing his name and that of Ace together with order forms on the Ace letterhead. Much of the business was "repeats", and when orders came into the office, either Yuhasz or Zacharias would take them once the training period was over. Also, if Yuhasz encountered "problems" on a job, Zacharias could be called to assist him.

The work was for an indefinite term. Yuhasz could quit or be discharged at will. He had no authority to hire others.

He was given no restrictions on the territory within which he could sell, but Zacharias could order him not to sell in a certain area. He was to follow the orders and directions given by Zacharias, whenever Zacharias chose to give them. He was to devote his full time to the venture, and was to sell strictly for Ace.

While the facts there arose under a claim for Workmen's Compensation, the court's language in *Pearson Company* v. *McDermid* (1941), 109 Ind. App. 228, 31 N.E.2d 642 dealing with another salesman appears particularly appropriate:

"It is apparent that the circumstances in the instant case fall far short of the requirements to constitute an inde-

pendent contractor. Decedent was employed under an agreement which provided that his contract of employment could be terminated by either party at will. The territory of his employment was controlled by the appellant, the contracts of sale were on a form furnished and approved by appellant, money collected on contracts was to be paid to appellant. There was no definite number of sales to be made, no definite job to be done, but such employment was a continuing one, subject to the will of appellant or appellee. The evidence further discloses that part of the time of appellee's decedent was spent in the store of appellant. We think there was such a supervision and control exercised by appellant as would take such employment out of the scope of an independent contractor." 109 Ind. App. at 235, 31 N.E.2d at 645.

Here the evidence favorable to defendant clearly supports the jury's finding that Yuhasz was not an independent contractor.

The judgment is, accordingly, affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 307 N.E.2d 516.