HELEN SMITH, SPECIAL ADMINISTRATRIX OF THE ESTATE OF ARTHUR W. SMITH, DECEASED *v.* FLOYD KAUFFMAN AND STANDARD OIL COMPANY

[No. 3-1075A225. Filed September 12, 1977.]

*Edward N. Kalamaros, Edward N. Kalamaros & Associates,* of South Bend, for appellant.

*Timothy W. Woods, Jones, Obenchain, Johnson, Ford & Pankow,* of South Bend, for appellees.

HOFFMAN, J.—Helen Smith, Special Administratrix of the Estate of Arthur W. Smith, brought an action against Floyd Kauffman and Standard Oil Company for the wrongful death of her husband. The allegations of the complaint were generally that the defendants had a duty of care with regard to the mechanical means and applied method of fueling a crane, which they failed to observe, causing the accidental fire which killed the decedent. After a trial by jury, a verdict was rendered for the defendants upon which judgment was entered. Smith thereafter perfected this appeal contending that the verdict was contrary to law in that there was no evidence to support it and that the trial court erred in its overruling of a motion for judgment on the evidence on the issue of contributory negligence and assumption of the risk and, further, in its giving of certain instructions and in its ruling on the admissibility of several color photographs and of evidence concerning the pain and suffering of the deceased.

Insofar as appellant attacks the weight or sufficiency of the evidence in her appeal from a negative judgment, no issue is

properly presented for review. *Graves v. City of Muncie* (1970), 255 Ind. 360, 264 N.E.2d 607; *Plumley v. Stanelle* (1974), 160 Ind. App. 271, 311 N.E.2d 626. However appellant contends that the trial court erred in denying her motion for a judgment on the evidence notwithstanding the verdict pursuant to Ind. Rules of Procedure, Trial Rule 50, on the issue of liability. It is argued therefore that there was *no* evidence that Arthur Smith was contributorily negligent or that he incurred the risk of his own injuries but rather that the evidence was uncontradicted that the proximate cause of his death was the negligence of the appellees.

In considering such a contention this court will neither weigh the evidence nor judge the credibility of witnesses but will look only to the evidence most favorable to the appellee together with all reasonable inferences to be drawn therefrom. *Muehlman, et ux. v. Keilman, et ux.* (1971), 257 Ind. 100, 272 N.E.2d 591.

In this context the record reveals the following facts most favorable to the appellees. Arthur Smith was employed as a heavy equipment mechanic by the Rieth-Riley Construction Company in Goshen, Indiana. On the date of the accident, June 15, 1967, Floyd Kauffman, an employee of Standard Oil, drove his fuel tanker into the Rieth-Riley yard at their main shop in order to deliver motor oil from a barrel into a 55-gallon "lubester." Thereupon Arthur Smith asked Kauffman if he had any gasoline to fill a crane he had been working on. Kauffman answered that he did and that he would supply it after he had finished "hooking up" the air hose for the transfer of the oil at a nearby site. Thereafter, Kauffman heard Smith start the crane apparently to make it more accessible for fueling.

Having completed the oil transfer, Kauffman entered his tanker and drove it around to within fifteen feet of the crane. He engaged the power takeoff with the clutch, then, getting out and going behind the truck, he set his meter and started the pump. Kauffman pulled out sufficient hose to get to the filler cap which was in the cab of the crane near the exposed engine. As he took the nozzle around to the cab the deceased "stuck his head out the

window" and said "Floyd, hand me the hose and I'll fill it." Kauffman handed the hose up to Smith who got it and "pulled it up in through the window." Thereafter Kauffman returned to the rear of the tanker to view the meter where he discerned first a gentle and then a rapid flow of fuel. In anticipation of the tank's becoming full Kauffman put his thumb on the meter button to stop the flow. Simultaneously he noticed gasoline spray up above the window of the crane. He pushed the shutoff button to stop the fuel but somehow it ignited and exploded throughout the cab.

Kauffman ran to the side of the crane and saw Arthur Smith jump out of the crane with his shirt still burning. Leonard K. Wogoman, the shop foreman, hurried from his office and threw a light jacket over the victim to smother the flames. The victim was then taken by ambulance to a hospital and later transferred to the University of Michigan Burn Center where he died on September 21, 1967.

Appellant ascribes as negligent conduct on the part of Standard Oil Company the use of a Buckeye 882 nozzle and valve assembly at the delivery end of the hose used with the fuel tank truck. She further ascribes as negligent conduct on the part of Floyd Kauffman his failure to properly fill the crane's fuel tank by checking for sources of ignition and by securing against static electricity.

The record reveals ample evidence from which the trier of fact could have found contrary to these assertions.

The nozzle and valve assembly had a pistol grip type of lever which allowed for the gradual dispensing of fuel through a positive manual action. Kauffman had used the same nozzle without incident to fill Rieth-Riley's equipment before. He had even filled the crane in question several times previously. Moreover, Dr. Paul F. Youngdahl's expert testimony that the lack of an automatic shutoff was a hazardous characteristic of the valve is tempered by his further assessment that the rate of flow would depend on how far the operator of the nozzle moved the level to raise the valve stem and that the gasoline nozzle itself was not actually defective.

There was also evidence from which the trier of fact could conclude that Kauffman's delivery of fuel was entirely reasonable and was in accordance with the applicable portions of the Standard Oil In-Field Development Guide. He observed upon pulling the tanker within fifteen feet of the crane no dangerous conditions which would preclude filling the tank. Kauffman handed the nozzle to the decedent at his request and began watching the meter to avoid an overflow. As soon as he observed gasoline he stopped the pump by pushing the lever. Furthermore there was expert testimony to the effect that there had been proper bonding and grounding during the transfer of fuel since the crane had metal tracks and the nozzle from the tanker after being inserted in the metal filler pipe would have equalized any potential charge between the vehicles.

Under such circumstances, it cannot be said that the verdict was contrary to the weight of the evidence and that the evidence was all in the direction opposite to the decision rendered. *Evans v. Breeden* (1975), 164 Ind. App. 558, 330 N.E.2d 116. Instead, the fueling operation appeared normal from Kauffman's testimony, and as appellant concedes, there was no direct evidence that the nozzle apparatus itself caused the overflow. Moreover, where there is a conflict in the evidence or different witnesses could be afforded a different credibility by reasonable persons, it is not within this court's province to second guess those authorized as finders of fact with a different conclusion.

Appellant frames her Trial Rule 50, *supra*, assertion concerning a failure of proof on contributory negligence and assumption of the risk as if this court on appeal can weigh the sufficiency of appellees' evidence to carry the burden of proving the elements of their defenses at trial. However when such a motion is denied after the jury has rendered a verdict this court, like the trial court, must view only the evidence and reasonable inferences to be drawn therefrom favorable to the verdict in accordance with the standard of raising such an alleged error pursuant to Ind. Rules of Procedure, Trial Rule 59(A)(4). *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. If there is relevant evidence, as hereinbefore

noted, which supports the conclusion of the jury, then the motion may not properly be granted because that evidence which supports the general verdict is deemed sufficient and thereby the final determination as to any defense whether of contributory negligence or assumption of the risk is left to the fact finder. *Huff v. Travelers Indem. Co., supra.*

Arthur Smith had a familiarity with the Koehring crane. He had been assigned the task of making it operative and had recently started the crane in conjunction with that effort. As a result thereof it was reasonable to infer that the engine was hot. Wogoman estimated that the manifold was approximately 8" to 10" from the gasoline fill-pipe. Under such circumstances Arthur Smith as a mechanic acquainted with working on gasoline engines would have known the risks of filling a gasoline tank near either exposed ignition wires or hot exhaust manifolds.

Thus, where conflicting inferences could properly have been drawn concerning both defendants' alleged negligence and decedent's alleged contributory negligence their resolution was within the sole province of the jury. Furthermore since there was sufficient evidence upon which a defendant's verdict could be derived and since the jury so found, the issue of damages cannot properly be considered on appeal. *Yuhasz v. Mohr* (1974), 159 Ind. App. 478, 307 N.E.2d 516; *See, Chestnut v. Southern Indiana R. Co.* (1901), 157 Ind. 509, 62 N.E. 32.

Smith predicates her second main contention of error on the giving of appellees' tendered Instruction Nos. 3 and 5 and the refusal to give certain of her tendered instructions.

Appellees' tendered Instruction No. 3 stated:

"In determining whether Floyd Kauffman and the Standard Oil Company were negligent in the manner of delivering gas to the crane in question, you may consider, among other things, the custom and practice of the industry.

"That is, if you find the defendants' methods were consistent with the accepted procedures and customs in this industry, then such facts may be considered as evidence of reasonable care on the part of Floyd Kauffman and the Standard Oil Company."

Appellant questions the foregoing instruction on grounds that it does not contain an admonition that the customs and practices of the industry may not be considered if they were illegal. Since evidence of Standard Oil Company's Manuals for dealing with inflammable fluids was apparently submitted by appellant as the standard of care for Kauffman to follow, the defendants' Instruction No. 3 must be deemed an appropriate discussion of how the customs of the industry should be considered in light of other evidence concerning the safe fueling of gasoline driven vehicles. The absence of an unrelated admonition concerning only the potential illegality of company standards is incongruous with their submission as criteria upon which Kauffman's actions should be measured.

Furthermore defendants' Instruction No. 3 is a nonmandatory explanation that following the standards of the industry *may* be considered as evidence of reasonable care. Since plaintiff's Instruction No. 9 discussed the Indiana State Fire Marshall's Code relative to the operation of automatic discharge nozzles in a manner which would adequately disclose the legal requirements concerning the practice of transferring gasoline, the foregoing Instruction No. 3 cannot be characterized as either inadequate or prejudicial.

Appellees' tendered Instruction No. 5 stated:

"Evidence was admitted during the trial concerning certain safety codes and parts of manuals which contain precautions adopted by the Standard Oil Company. Noncompliance or compliance with the provisions of these codes or manuals is not of itself either negligence or lack of negligence as a matter of law. You may consider the evidence of the codes or manuals only in connection with other evidence bearing upon the question of negligence or contributory negligence."

Appellant contends that this instruction was inartfully drawn in that it referred to safety codes as well as manuals concerning precautions in the dispensing of inflammable fuel when in actuality there was no evidence of a "Standard Oil Safety Code" *per se*. However, with elements of the State Fire Marshall's code submitted into evidence in addition to the manual from Standard Oil, the

instruction advised an appropriate consideration of these two items in connection with other evidence. Thus no reversible error is demonstrated by the giving of the foregoing Instruction No. 5 merely because it mentions codes and manuals.

The alleged error in refusing to give certain of appellant's tendered instructions and the giving of a modified version of appellant's Instruction No. 9 must be considered in light of the other instructions given to the jury. *Montgomery v. Gerteisen* (1964), 135 Ind. App. 633, 195 N.E.2d 868.

Appellant argues that the trial court should have given her tendered Instruction No. 7 which stated:

"You are instructed that the one who carries on an extra-hazardous activity is liable to another, whose property or person the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity, for harm resulting thereto although care is exercised to prevent any harm.

"Thus, this rule puts to you, for your consideration, three specific questions of fact:

"First, did the defendants and/or either of them, engage in an extra-hazardous activity at the same time and at the same place as the plaintiff alleges?

"Second, if defendants and/or either of them, did, then should the defendants, and/or either of them, have realized that it would be likely to cause harm to the persons of others, including that of plaintiff's deceased?

"Third, was that handling of gasoline the cause of alleged damages, if any, to the plaintiffs?"

Relying on *Galbreath v. Engineering Constr. Corp.* (1971), 149 Ind. App. 347, 273 N.E.2d 121 (transfer denied), appellant contends that absolute liability should apply to those situations where injury is caused by an extra-hazardous activity which in the case at bar is said to be the filling of the crane's fuel tank. In *Galbreath* escaping natural gas exploded after dynamite was used for blasting rock in making an excavation near a gas main. The accident was caused by a danger inherent in the work to be accomplished (blasting) and not by the manner in which the work was performed.

However, where the doing of a task is safe when properly executed it is not intrinsically dangerous and absolute liability does not attach. *Neal, Admr. v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280. Since the filling of a gasoline tank is not an extra-hazardous activity in and of itself the giving of appellant's Instruction No. 7 would have drawn upon an incorrect theory of the law. Therefore it was properly refused.

Appellant's Instruction No. 10 sets forth safety codes promulgated by Underwriter's Laboratories Standards for Safety, and Regulations of the Interstate Commerce Commission Governing the Transportation of Dangerous Articles in Tank Motor Vehicles. Smith, while arguing the relevancy of these codes, concedes that instructions to the jury must be predicated on the evidence in the case, and instructions which are not sustained by the evidence should not be given. *City of LaPorte v. Henrf* (1908), 41 Ind. App. 197, 83 N.E. 655.

However, neither the Underwriter's Laboratories Standards for Safety nor the Interstate Commerce Commission Regulations were admitted into evidence. The jury had no occasion to consider their significance with regard to the circumstances of the case except insofar as Smith's expert witness made reference to them in his testimony. Furthermore, the function of instructing the jury does not include the presentation of additional factual elements which had previously been refused admission as evidence to be considered by the jury. The trial court must confine its instructions to the issues and the evidence. *Public Service Co. of Ind. v. DeArk* (1950), 120 Ind. App. 353, 92 N.E.2d 723. Accordingly appellant's Instruction No. 10 was correctly refused.

Appellant objects to the trial court's modification of her tendered Instruction No. 9 which stated in modified form:

"* * * * *

"You are further instructed that on the 15th day of June, 1967, there was in full force and effect the following standards and code approved by the Indiana State Fire Marshall, to wit:

* * * * *

* * * Delivery Nozzles — Manual Nozzle. The dispensing of Class I flammable liquid into a fuel tank or into a container shall be under the control of a competent attendant at all times. The use of any device which permits the dispensing of Class I flammable liquid when the hand of the operator of the discharge nozzle is removed from the nozzle control lever is hereby forbidden except when using an automatic nozzle at an automotive service station. * * *

"You are instructed that a violation of the * * * Indiana State Fire Marshal Code which I have just read to you may constitute evidence of negligence on the violator's part."

Since those eliminated portions of the Fire Marshall's Regulations which Smith requested had no application to the facts before the trial court, the modification was appropriate and the instruction proper.

Appellant's tendered Instruction No. 2 and No. 6 dealt generally with the measurement of damages which would have arisen were the appellees found to be negligent. While the arguments concerning the propriety of such instructions are irrelevant to an appeal from a negative judgment it is clear that refusal of the same under the circumstances was proper since they could be construed to require the jury to consider the mental suffering and physical pain of the deceased as an element of damages under a wrongful death action. Neither is appropriate in the instant case. *See generally, City of Indianapolis v. Willis, Administrator* (1935), 208 Ind. 607, 194 N.E. 343. *See also, Pickens v. Pickens* (1970), 255 Ind. 119, 263 N.E.2d 151.

Appellant's final contention is that the thirteen color photographs of Arthur Smith's burns and the deposition of the attending physician should have been admitted into evidence. From the record it is clear that the photographs and deposition were offered for the purpose of proving the pain and suffering of decedent as an element of damages.

As previously alluded to, where the jury found against plaintiff on the issue of negligence and freedom from contributory

negligence, error; if any, in refusing the admittance of this evidence concerning the measurement of damages, was harmless. *Yuhasz v. Mohr, supra* (1974), 159 Ind. App. 478, 307 N.E.2d 516. *See, Chestnut v. Southern Indiana R. Co., supra,* (1901), 157 Ind. 509, 62 N.E. 32; *Adkins v. Poparad* (1943), 222 Ind. 16, 51 N.E.2d 476. Therefore we do not address it.

For the foregoing reasons the judgment of the trial court must be affirmed.

Judgment affirmed.

Staton, P.J. and Garrard, J. concur.

NOTE—Reported at 366 N.E.2d 1195.