CITY OF INDIANAPOLIS, Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and James T. Callahan, Appellees.

No. 2–482A124.

Court of Appeals of Indiana, Third District.

Oct. 25, 1982.

<hr>

John P. Ryan, Corp. Counsel, by Michael D. Keele, Asst. Corp. Counsel, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellees.

1. IC 1974, 22–4–17–12 (Burns Ed.).

STATON, Judge.

Employer appeals the Review Board's award of unemployment compensation to Callahan. Employer contends that the evidence is insufficient to support the award.

Affirmed.

When reviewing the sufficiency of the evidence in unemployment cases, this Court is bound by the Review Board's decisions as to questions of fact.[1] This Court may neither weigh the evidence nor judge the credibility of witnesses. *Skirvin v. Review Board of the Indiana Employment Security Division* (1976), 171 Ind.App. 139, 144, 355 N.E.2d 425, 428. We will disturb the decision only if reasonable men would reach a different conclusion. *Molina v. Review Board of the Indiana Employment Security Division* (1981), Ind.App., 418 N.E.2d 1198, 1200. We may only consider the evidence, together with its reasonable inferences, most favorable to the Review Board's decision. *Skirvin, supra,* 355 N.E.2d at 428.

The facts most favorable to the decision are as follows: Callahan, an employee of the Indianapolis Police Department, suffered from a peptic ulcer. After a medical examination in May, 1981, Dr. Hoshour concluded that Callahan's desk job aggravated the ulcer. He recommended that Callahan either acquire an interdepartmental transfer or resign. After this exam, Callahan stayed home from work and called in sick. Between May and July, 1981, Callahan filed, with the medical liaison office, three of Dr. Hoshour's letters delineating the severity of Callahan's disability and the necessity of his transfer. Callahan also wrote several letters requesting transfer and filed them with the Personnel Department and the Chief of Police. Employer did not act on these letters and claims to have no record of them. Because Employer ignored Dr. Hoshour's recommendations for transfer and because he was physically unable to remain at his desk job, Callahan resigned on July 17, 1981.

The Review Board affirmed the decision of the Appeals Referee that:

"The . . . issue for us to determine herein is whether claimant is subject to the modification to the disqualification provisions of Indiana Employment Security Act [2] because his unemployment at employer was the result of a medically substantiated physical disability of his after he made reasonable efforts to maintain his employment relationship with employer.

"Because we find hereby that the evidence herein although conflicting established that said physical disability of claimant was medically substantiated by a physician's statements which claimant filed with employer between said May 20, 1980 and said July 17, 1980, we find hereby that claimant's unemployment at employer was the result of a medically substantiated physical disability of his.

"We find hereby that the evidence herein established that said physician advised claimant between said May 20, 1980 and said July 17, 1980 that it was medically advisable for him to be transferred by employer to another department there or otherwise to resign from his employment there because said physician believed that said physical disability of claimant was aggravated by working conditions of claimant in employer's department where he worked approximately during the last two and one half years of his employment at employer. Because we find hereby that the evidence herein established that although claimant requested employer between said May 20, 1980 and said July 17, 1980 to transfer him to another department there due to said physical disability of his, employer never informed claimant between said May 20, 1980 and said July 17, 1980 concerning claimant's said request to employer, we find hereby that claimant's unemployment at employer occurred after he made reasonable efforts to maintain his employment relationship with employer.

"Because of our above findings that claimant's unemployment at employer was the result of a medically substantiated physical disability of his after he made reasonable efforts to maintain his employment relationship with employer, we find hereby that claimant is subject to the modification to the disqualification provisions of the Act." (Brackets added.)

█ Employer contends that Callahan did not meet the requirements of the modification provision [3] because: 1) he did not substantiate his physical disability to Employer; 2) he failed to make reasonable efforts to maintain his employment relationship; and 3) he was voluntarily unemployed.

To support his first contention, Employer argues that no probative value exists in Callahan's undocumented testimony that he hand-delivered to the medical liaison office, three letters from Dr. Hoshour stating the severity of Callahan's condition, the necessity of his transfer, and the alternative of resignation. Employer also questions the probative value of Callahan's testimony that he hand-delivered his own written requests for transfer to the Personnel Department and Chief of Police. However, it is outside our province to weigh the evidence or judge the credibility of the witnesses. The evidence Callahan presented is sufficient to support the Review Board's decision that Callahan substantiated his physical disability.

Employer supports his next contention that Callahan failed to make reasonable efforts to maintain his employment relationship with several arguments: Callahan did not 1) verify Employer's receipt of his and Dr. Hoshour's letters; 2) inform Employer of his consideration of resignation before he actually resigned; 3) comply with Employer's request to be examined by Employer's physician; and 4) receive a medical leave of absence. Employer also claims

---

2. IC 1974, 22–4–15–1(d)(2) (Burns Ed. Supp. 1982):

"An individual whose unemployment is the result of *medically substantiated physical disability* and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation. . . ."

3. *See* note 2, *supra.*

that Dr. Hoshour's letter of October 30, 1981, delineating the medical necessity of Callahan's transfer and referring to previous futile attempts to communicate this necessity to Employer, was the first it heard of Callahan's disability. To support this last argument, Employer cites *Raham v. Review Board of Indiana Employment Security Division* (1980), Ind.App., 405 N.E.2d 606, 607. *Raham* stated that to maintain the employment relationship, the claimant must inform the Employer of his disability before termination.

*Raham* does not support Employer's contention. In *Raham,* the Court remanded the case so that the Review Board could make specific findings of fact on how the Employer was informed of Raham's health problems, whether Raham substantiated his problems to Employer, and how, if at all, he made reasonable efforts to maintain his employment relationship. *Id.* at 405 N.E.2d at 606. In the case at bar, the Review Board believed Callahan and drew reasonable inferences from Dr. Hoshour's letter of October 30, 1981, to conclude that he did make reasonable efforts to maintain his employment relationship. We can not invade the province of the Review Board when it was reasonable for it to believe Callahan's testimony. The letter of October 30, 1981 and Callahan's testimony have probative value and are sufficient to support the Review Board's award of benefits to Callahan.

■ Employer's last contention that Callahan failed to comply with the modification provision because he voluntarily resigned is set forth without supporting argument.[4] *Raham* implies that health-related departures, such as Callahan's, can constitute "involuntarily unemployed"[5] as used in the modification provision. In addition, it is well-settled that courts should liberally construe the Employment Security Act in favor of the claimant.[6] Therefore, the evidence is sufficient to support the Review Board's decision in favor of Callahan.

Affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.

---

4. *Appellant's Brief* at 15.

5. *See* note 2, *supra.*

6. *Carnegie-Illinois Steel Corp. v. Review Board of Indiana Employment Security Division* (1947), 117 Ind.App. 379, 389, 72 N.E.2d 662, 666.