Robert W. FURR, Claimant-Appellant,

v.

**REVIEW BOARD OF the INDIANA EM-PLOYMENT SECURITY DIVISION, John Mowrer, David Adams and Joe Harris as the members of and constituting the Review Board of the Indiana Employment Security Division; and Walter Irvin, Respondents-Appellees.**

No. 2–785A208.

Court of Appeals of Indiana, First District.

Sept. 23, 1985.

Timothy Broden, Legal Services Program of Northern Indiana, Inc., Lafayette, for claimant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for respondents-appellees.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Robert W. Furr appeals the decision of the Review Board of the Indiana Employment Security Division (Review Board) denying his application for unemployment compensation benefits on the ground he was an independent contractor and not covered by the Indiana Employment Security Act. We reverse.

## FACTS

Furr worked for Walter Irvin in the application of vinyl siding to houses from March 20, 1984 to August 27, 1984. Irvin worked as a sub-contractor with Midwest Home Improvement Company on jobs in western Indiana and eastern Illinois. Irvin paid Furr thirty-five percent of the contract price for his help. Furr was designated by Irvin as an independent contractor, and no income taxes or social security taxes were withheld from Furr's pay, and Irvin did not report Furr's wages to the Employment Security Division or pay any unemployment compensation contributions on such compensation. Irvin furnished Furr with a form 1099 rather than a W–2 form. Furr had worked for Irvin previously on the same basis.

The uncontroverted evidence reveals that Irvin supervised all the work, designated the jobs to be worked on, furnished all the tools and equipment, that Furr reported to Irvin's house each day and Irvin provided transportation to and from the job site. Further, Furr's work involved cutting the siding to the measurements given him by Irvin and carrying the siding thus cut to Irvin who applied it. Furr neither maintained nor operated any separate business of siding application. According to Irvin's testimony, he set the hours and days of work and normally was there on the job supervising Furr. Irvin's testimony further indicated that Furr could not work when he wanted to, but rather, he would have to work when Irvin told him to or quit working.

When Furr's employment ceased, he filed for unemployment compensation. A Liability Referee determined he was not covered which decision was adopted by the Review Board. That decision found that "claimant was a siding applicator, who had worked as an independent contractor for this employer. The liability referee further finds that in the case of roofing and siding applicators, the courts have determined that they are independent contractors, not subject to

the coverages provided by the Indiana Employment Security Act."[1]  Record at 50.

## ISSUE[2]

The dispositive issue in this case is whether the Review Board's decision that Furr was an independent contractor not subject to the Indiana Employment Security Act can be upheld.

## DISCUSSION AND DECISION

The essential issue here is whether or not the Review Board's finding that Furr was an independent contractor not covered by the Indiana Employment Security Act can be upheld.  The Act itself provides the answer.  Indiana Code section 22–4–8–1, in relevant part provides:

" 'Employment' subject to the other provisions of this Section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, expressed or implied.

"(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact; (B) such service is performed outside the usual course of the business for which the service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or is a sales agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort."

In construing this statute, in a case also involving siding applicators, the court in *Alumiwall Corp. v. Indiana Employment Security Board* (1960), 130 Ind.App. 535, 539, 167 N.E.2d 60, 61, said:

"The sole question thus presented for decision is whether or not such applicators come within the purview of this section of the Act [I.C. 22–4–8–1] or are excluded by provisions (A) and (B)[3] ... The statutory test to thus be applied to the factual situation is, first, whether such applicators are 'free from control or direction over the performance of such service' *and,* secondly, whether such applicators are 'engaged in an independently established trade, occupation, profession or business.'  ... However, the test as provided for in the statute does not necessarily include nor require the indicia of the independent contractor theory to govern.  (Original emphasis.]"

The court in *Alumiwall* went on to say that the only test is whether the claimants

1.  The Review Board cites to no authority in support of this broad statement.  Perhaps the Board had reference to *Alumiwall Corp. v. Indiana Employment Security Board* (1960), 130 Ind. App. 535, 167 N.E.2d 60, a case which is discussed in the body of this opinion and which is factually distinguishable.

2.  Furr also raises some questions as to the sufficiency of the Review Board's findings, and to the fact that the Liability Referee conducted only a record review of the Appeals Referee's hearing and did not hear the witnesses.  However, the essential issue is whether or not Furr was engaged in covered employment, and the evidence adduced at the hearing before the Appeals Referee reveals clearly that he was.  Thus, the other issues alluded to by Furr are subsumed in this one dispositive issue.

3.  The statute in effect in 1960 (Burns' Ind.St. § 52–1532) provided:

"(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (B) such individual, in the performance of such services is engaged in an independently established trade, occupation, profession or business; or is an agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort."  Thus, conditions (A) and (B) of that statute are substantially the same as conditions (A) and (C) of Ind.Code § 22–4–8–1.

were (1) free from direction and control and (2) engaged in an independently established business. The court clearly held that both tests had to be met in order for coverage under the statute to be excluded. *Alumiwall*, 130 Ind.App. at 539, 167 N.E.2d at 61. The court found the siding applicators in *Alumiwall* to be within the statutory exclusion. The facts in *Alumiwall* are vastly different. There, Alumiwall Corp. was engaged in the roofing and siding business. Its salesmen sold the jobs and delivered the siding to the job site and contracted with applicators to do the installation. The facts as recited in the opinion are enlightening:

"The applicators received their assignments of work by calling on the phone or by going in person to the office of the appellant. They received a gross amount according to the number of 'squares,' which is a ten foot square space, which they applied to the particular building. The applicators furnished their own trucks and all their own equipment. All expenses pertaining to the transportation and maintenance and upkeep of their equipment were paid by the applicators out of the gross amount they received. Also from this gross amount the applicators would hire whatever help they felt was needed on the particular job. The applicators would then tell the appellant how much these helpers were to be paid, the appellant would then pay such sum to the helpers and deduct this amount from the gross amount due the applicators. The appellant had no right to tell the applicators how many helpers, if any, to hire, nor what they should be paid, nor did the appellant retain the right to fire or hire such helpers. The applicators also had complete discretion as to the manner and means of performing their work, although if the appellant received a complaint from the customer as to the workmanlike manner of the application of the siding to the building, upon inspection by the appellant and upon finding that such work was not being done in a good and workmanlike manner, the applicator could be taken off the job. Any defective work had to be corrected at the expense of the applicators. The appellant exercised no control over such applicators in regard to their working hours, to the number of jobs they took, or as to whether or not they did or did not work. In other words, if the applicator, upon the completion of a job, did not desire any other work he simply did not call the appellant and request further jobs."

130 Ind.App. at 537–38, 167 N.E.2d at 60–61.

The Liability Referee found that the services of such applicators and their helpers constituted employment by Alumiwall Corp., but this decision was reversed by the Appellate Court. It is significant, however, that the *Alumiwall* opinion deals only with the relationship of the applicators and their helpers to Alumiwall Corp. The relationship between the helpers and the applicators was not involved, but that is the precise issue in this case. Irvin's relationship with Midwest which would parallel the relationship of the applicators with Alumiwall Corp., is not in issue. We are concerned with the relationship between Irvin and Furr, one which we deem to be that of covered employment.

Furr was not engaged in any independent business of siding application. He did not furnish his own equipment and transportation. He paid no expenses. He exercised no discretion as to the manner and means of performing the work. Neither provision (A) or (C) of the Ind.Code § 22–4–8–1 test was met.

■ Irvin urges that because it was understood that Furr's status was that of an independent contractor and because no taxes were withheld, the Review Board's decision should be upheld. It is true that where the parties define their relationship as that of independent contractor-principal, *and the facts of the relationship support that conclusion,* the courts will not interfere. *Stone v. Pinkerton Farms, Inc.* (7th Cir.1984), 741 F.2d 941. But, an employer-employee relationship may be found despite

the parties designation of an independent contractor status, if enough of the indicia of an employer-employee relationship exist. *Id.* Though the belief of the parties as to the nature of their relationship is relevant, it is not determinative. *Wardle v. Central States, Southeast and Southwest Areas Pension Fund* (7th Cir.1980), 627 F.2d 820, *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Courts have also considered how the parties handle Social Security and federal income tax matters, but such is not controlling. *Id.* That such designations by the parties are not controlling, and may not be determinative, is clear in cases such as this because the parties are forbidden to enter into any contract waiving the benefits of the Employment Security Act. Ind.Code § 22–4–33–1; Ind. Code § 22–4–34–3.

The question, under Ind.Code § 22–4–8–1 is whether Furr was free from control *and* whether he was engaged in an independent business. We think it is clear he was not.

▮ Even were we to apply common-law definitions of independent contractor and master-servant, our result would not change. An independent contractor is one who, is exercising an independent employment, contracts to do certain work according to his own methods and without being subject to the control of his employer except as to the product of his work. It is when the person employing prescribes what is to be done, but not how it is to be done, or who is to do it, that the person so employed is an independent contractor. *Hale v. Peabody Coal Co.* (1976), 168 Ind. App. 336, 343 N.E.2d 316; *Yuhasz v. Mohr, Admx.* (1974), 159 Ind.App. 478, 307 N.E.2d 516. If the employer retains sufficient right to control the work, the relationship created is that of master and servant. *Hale.* The general test in determining the existence of a master and servant relationship is the right to direct and control the servant. *Gibbs v. Miller* (1972), 152 Ind. App. 326, 283 N.E.2d 592, *trans. denied.* Among the indicia of a master-servant rela-

tionship are the right to discharge, mode of payment, control over the means used, supplying the tools and equipment by the employer, belief of the parties as to a master-servant relationship, and establishment of work boundaries. *Id.* Applying these tests and definitions, we would find that Furr was an employee of Irvin, not an independent contractor.

▮ However, the common-law tests for independent contractor and master-servant, while helpful, are not controlling. It is the statute, Ind.Code § 22–4–8–1, which controls. We interpret that statute as preferring a finding of covered employment unless the tests for exclusion are strictly met. *Alumiwall.* They were not. Under the statute, Furr was an employee of Irvin engaged in covered employment under the Indiana Employment Security Act.

▮ In reviewing decisions of the Review Board, we engage in a two-tier standard of review. First, we look to the relationship between the Board's conclusion and its findings and inquire as to the reasonableness of the decision. Secondly, we look to see if the evidence in the record justifies the premises or findings of basic facts. *Adams v. Review Board of Indiana Employment Security Division* (1983), Ind.App., 452 N.E.2d 1083; *Graham v. Review Board of Indiana Employment Security Division* (1979), 179 Ind.App. 497, 386 N.E.2d 699. The Review Board's finding of fact are presumed conclusive and binding. *Dozier v. Review Board of Indiana Employment Security Division* (1982), Ind.App., 436 N.E.2d 373, *trans. denied.* This court may reverse such findings only if we believe reasonable persons would be bound to reach a different conclusion. *City of Indianapolis v. Review Board of Indiana Employment Security Division* (1982), Ind.App., 441 N.E.2d 36; *Molina v. Review Board of Indiana Employment Security Division* (1981), Ind. App., 418 N.E.2d 1198.

Here, the uncontroverted evidence demands a conclusion opposite that reached by the Review Board. The evidence clearly does not justify the Board's findings. Reasonable persons would be bound to reach a different conclusion. Under our standard of review, reversal not only is proper, but also is required.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

NEAL and ROBERTSON, JJ., concur.