611 N.E.2d 670 (1993)
James BISHOP, Appellant-Claimant,
v.
REVIEW BOARD OF THE INDIANA DEPARTMENT OF EMPLOYMENT AND TRAINING SERVICES, Sandra D. Leek, George H. Baker and Mark T. Robbins, As Members of and Constituting the Review Board of the Indiana Department of Employment and Training Services, and Richmond Casting, Appellee-Employer.
No. 93A02-9208-EX-394.
Court of Appeals of Indiana, First District.
April 6, 1993.
*671 Kathryn M. Williams, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant-claimant.
Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-employer.
BAKER, Judge.
Claimant-appellant James Bishop appeals the denial of his claim for unemployment benefits by the Review Board of the Indiana Department of Employment and Training Services (the Board). Bishop claims the Board's decision was erroneous.
We affirm.

STATEMENT OF FACTS
The facts most favorable to the Board's decision reveal that Bishop began working at appellee Richmond Casting, a waterpump plant, as a hunter operator[1] in 1983. Although he took about a four-year leave of absence beginning in 1984, he returned in 1988 and worked there until January, 1992.
In October, 1991, Bishop volunteered to work a "shake-out" shift. As part of this shift, Bishop lifted pumps filled with iron onto a conveyor belt and placed them inside a tub. While doing so, Bishop injured both his back and legs. He was taken to the hospital where Dr. Kern treated him. Thereafter, pursuant to Dr. Kern's recommendation and under his supervision, Bishop participated in a rehabilitation program at 21st Century Rehabilitation, Inc.
About one month later, at 21st Century's request, Richmond Casting allowed Bishop to participate in a work-related rehabilitation program. Under this program, Bishop performed light duty work at Richmond Casting for four to six hours per day, and then went to 21st Century for two to four hours of rehabilitation.
*672 In the third week of December, 1991, 21st Century told Richmond Casting's plant manager, Gil McBride, that Bishop was ready to resume full duty work. Even though 21st Century determined that "[Bishop] was physically able to do any job that [21st Century] had seen at [Richmond Casting]," Record at 42, McBride assigned Bishop to light duty work for an additional two weeks.
When the two-week period ended on January 2, 1992, Bishop resumed his position as a hunter operator. After about three hours, however, Bishop told McBride his back was hurting. In response, McBride told him to take his lunch break and notify him if he did not feel any better. Bishop took his lunch break, but he neither returned to work after lunch nor told McBride that he was leaving.
Instead of reporting to work the next day, Bishop went to see Dr. Kern. After examining him, Dr. Kern gave Bishop a note stating "[Bishop] unable to tolerate job. He is at maximum medical improvement." Record at 30-32, 62. The doctor never advised Bishop to quit his job, however. Later that day, when Bishop called John Hartman, his supervisor, and read him this note, Hartman told Bishop to provide additional medical evidence substantiating his inability to work.
The following day, January 4, 1992, Richmond Casting received a letter from Dr. Kern. In the letter, Dr. Kern stated Bishop had performed well at 21st Century, his condition was unchanged, he had reached his maximum medical improvement, and the doctor had nothing further to offer Bishop. Later that day, Dr. Kern spoke with McBride on the telephone and told him that Bishop suffered a 6% permanent partial impairment (PPI); the doctor admitted, however, that a 5% PPI was "no big deal."[2]Record at 45. Dr. Kern also told McBride that he could find nothing physically wrong with Bishop.
Richmond Casting kept Bishop's job open for the next several weeks while waiting for "more word from the doctor or some form of disability statement." Record at 44, 46. Bishop never contacted his employer during this period; on January 20, 1992, however, Bishop showed up at the plant to pick up his bonus check. As Bishop was leaving, McBride asked him "[w]hat's going on, have you quit?" Record at 45. Bishop answered that he had not. Notwithstanding Bishop's stated intention, McBride considered Bishop's recent behavior as a "voluntary quit" and terminated his employment at Richmond Casting.
On January 31, 1992, Bishop applied for unemployment compensation benefits. About a month later, the Department of Unemployment and Training Services (the Department) denied Bishop's application on the ground the evidence insufficiently substantiated his involuntary separation from employment due to a physical disability under IND. CODE 22-4-15-1(c)(2). Because Bishop failed to make this showing, concluded the Department, Richmond Casting had just cause to discharge him. Bishop timely appealed the Department's decision. Following a hearing, an Administrative Law Judge affirmed the Department's denial, and soon thereafter, the Review Board summarily affirmed.

DISCUSSION AND DECISION

A. Standard of Review
When reviewing decisions concerning unemployment compensation matters, we are bound by the Board's resolution of all factual matters. Ryan v. Review Board of the Indiana Department of Employment and Training Services (1990), Ind. App., 560 N.E.2d 112, 114. We will neither reweigh evidence nor reassess witness credibility. Id. Considering only the evidence most favorable to the Board's decision, and all reasonable inferences drawn therefrom, we will affirm if there is substantial evidence of probative value supporting the Board's determination. Id.

*673 B. Burden of Proof
The employer bears the initial burden of proof to establish a prima facie showing of just cause for an employee's termination. Id. If the employer meets this burden, the burden shifts to the employee to introduce competent evidence to rebut the employer's case. Id.

C. Just Cause
Under Indiana's unemployment compensation laws, an unemployment claimant who voluntarily leaves his or her employment without good cause is ineligible for benefits. IND. CODE 22-4-15-1; City of Indianapolis v. Review Board of the Indiana Employment Security Division (1982), Ind. App., 441 N.E.2d 36. IND. CODE 22-4-15-1(c) lists several conditions which constitute "good cause" and provides, in relevant part:
(2) An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation.
Bishop contends he was erroneously disqualified from receiving unemployment benefits because insufficient evidence supports the Review Board's conclusion that he was not involuntarily separated from employment due to a medically-substantiated physical disability.
Contrary to Bishop's contention, the record reveals ample evidence supporting the Review Board's determination that Richmond Casting had just cause to terminate him. During Bishop's hearing before the Department, Richmond Casting showed Bishop was absent from work for seventeen days, he failed to contact Richmond Casting during this period, and he failed to substantiate his claim that he was physically disabled. Although Dr. Kern told McBride that Bishop had a 6% PPI, the doctor believed both that a 5% PPI was "no big deal," and that Bishop was physically able to perform any job at Richmond Casting. Perhaps the most damaging blow to Bishop's claim was the doctor's statement that he could find nothing physically wrong with Bishop.
At the very least, this combination of evidence satisfied Richmond Casting burden to make its prima facie case. See Dozier v. Review Board of the Indiana Employment Security Division (1982), Ind. App., 436 N.E.2d 373, trans. denied (claimant who failed to notify her employer that her extended absence was medically-related was properly denied unemployment benefits). To rebut Richmond Casting's showing, Bishop then had the burden to substantiate his claim of an ailing back with more than a subjective assertion. Other than Dr. Kern, who was at best equivocal regarding the extent of Bishop's disability, Bishop provided no evidence substantiating his physical disability. The Review Board was not required to believe Bishop, and, in fact, if the Board did not believe Bishop, we are not permitted to believe Bishop, either. Ryan, supra. Accordingly, we conclude the Review Board did not erroneously determine Bishop failed to meet his burden of rebutting Richmond Casting's showing of good cause.
Affirmed.
NAJAM and FRIEDLANDER, JJ., concur.
NOTES
[1] A hunter operator makes cores for the water pumps. This job requires repetitious lifting of objects weighing between five and eight pounds.
[2] In fact, Dr. Kern told McBride that "Arnold Schwarzeneger [sic] would probably have a 5% PPI." Record at 45.